# Brick *against* Coster.

An affidavit of defence to a bond given for the purchase money of land conveyed by deed with general warranty, stated that adverse outstanding claims existed prior to the purchase. *Held* insufficient, for not alleging that these claims were good or believed by the defendant to be so.

The 2d section of the Act of 6th of April 1833, releases land sold by one of the mining companies therein mentioned, within one year after the passage of the Act.

ERROR to the District Court for the city and county of *Philadelphia*, in which an action of debt was brought by John G. Coster, trustee for the New York and Schuylkill Coal Company, against Joseph M. Eldridge and John R. Brick, on a bond executed by the defendants to the plaintiff. The plaintiff filed a copy of the bond, which was in the penal sum of $2544 to the plaintiff, as John G. Coster, of the city and State of New York, trustee for the New York and Schuylkill Coal Company, conditioned to pay $1272; one half on the 1st of November 1833, and the other half on the 1st of November 1834, with interest. The bond was dated on the 25th of April 1833.

One of the defendants, Brick, filed the following affidavit of defence:

" That the bond on which this suit is brought was given for part of the consideration of the purchase of a tract of land in Schuylkill county, and State of Pennsylvania, from the said John G. Coster, trustee for the New York and Schuylkill Coal Company. That the said land was bought by the said defendants at public sale, at which notice was given of a claim under a title adverse to that of the said trustee, and bought under an assurance that the said vendors would give a general warranty against all claims, and make a good and sufficient title, free and clear of all claims, before the money for which the said bond was given should be demanded. And this deponent further says, that he hath not paid any part of said bond, either principal or interest; nor hath the same or any part thereof been demanded of him, except that

[Brick v. Coster.]

at different times the counsel for the plaintiff would make some favourable statement of the clearing away of adverse claims, and say that the defendants ought to pay some money. And affirmant further saith, that the said vendors accordingly made a deed of conveyance of said land to said defendants, with a general warranty therein contained, acknowledged and recorded in Schuylkill county aforesaid, dated 6th of December 1832, a copy of which is hereto annexed, and the original is in this deponent's possession, ready to be produced, as this court may direct. And affirmant further saith that the said Coster, as trustee as aforesaid, hath been, as affirmant hath been informed and believes, and expects to prove, ever since the said sale, concerned or engaged in the prosecution or defence of the title under which he sold to the said defendants, until some time in the present year, when he obtained a nonsuit in a case of Hoffman against Coster *et al.*, and a judgment in his favour at the last term of the Supreme Court of the United States, in the case of Runyan against Coster and another, trustees for said Coal Company. That the said Coster, trustee as aforesaid, as this affirmant has been informed and believes, and expects to prove, hath, since the date of said bond, purchased the title upon which the said suit of Hoffman against him was founded, in and to all the lands held by said Coster, trustee, or in which he was interested, except to a tract sold by them to a certain Mackey, and to the tract sold to the said defendants as aforesaid, leaving the said defendants' land, which he was bound to protect and make perfect, exposed to the claims of the said Hoffman. That this affirmant received, shortly before the commencement of this suit, from the plaintiff's attorney, the note of which the following is a copy:

Dear sir—I have received positive instructions from Mr Mercein to proceed to the collection of your bond. I will thank you to inform me whether it is your determination to stand a suit. The case of *Hoffman* v. *Coster et al.*, has been terminated by a nonsuit.

*October 21st*, 1840.

But this deponent is advised and believes, that nothing has been done, since the sale to the defendants as aforesaid, to confirm or make valid the title which the vendor then had; and this deponent is advised and believes, that there is reason to apprehend that there are other outstanding claims under adverse titles existing prior to the purchase by defendants as aforesaid, which go for the whole land sold to defendants as aforesaid, and in particular among others a claim by the feoffees of John Pott to the land conveyed to the defendants as aforesaid, for which defendant is informed and believes, a suit has been brought by them in Schuylkill county, which is yet pending and undetermined. And this deponent has been informed and believes, that the said Coal Company is either dissolved or about being dissolved, without leaving assets

to satisfy any claim which defendants might have on said warranty; and that the affairs of the said company are now in a very involved condition, and, as he understands and believes, sales of the stock of said company, lately made in New York, were for $3 per share, the par value of said shares being $50 each."

There was annexed to the affidavit a copy of the deed, made 6th of December 1832, between John G. Coster, of the city of New York, trustee for the New York and Schuylkill Coal Company, of the first part, the corporation in the State of New York known by the name, style and title of the New York and Schuylkill Coal Company, of the second part, and the defendants of the third part. It recited that " whereas Thomas Morris, James Hall, Jacob Houseman, Samuel C. Jaques and John C. Hamilton, trustees, &c., by indenture dated the 9th of June 1827, recorded in the office for recording of deeds, &c., in and for the county of Schuylkill, in the State of Pennsylvania, in deed-book No. 5, page 481, did grant and convey unto John G. Coster, party hereto, John Hone, Augustine H. Lawrence, Henry M. Van Solinger and Moses Jaques, their heirs and assigns, *inter alia*, the tract of land hereinafter described, and conveyed with the appurtenances, to hold the same in trust; among other things, that the said John G. Coster, John Hone, Augustine H. Lawrence, Henry M. Van Solinger and Moses Jaques, or a majority of them, or of the survivors of them, whenever requested so to do in writing under the corporate seal of the said company, duly affixed by the order of the said company, should convey the lands and premises in and by the said indenture described and conveyed to such persons, and to such uses, and in such manner, as a majority of the stockholders or directors of the said company, in virtue of their charter, should prescribe. And whereas the said John Hone, Henry M. Van Solinger and Moses Jaques, who survived the said Augustine H. Lawrence, by indenture dated the 28th of April 1830, pursuant to an order of the directors of the said company, passed at a legal meeting held on the day of the date of the indenture now reciting, and signified in writing under their corporate seal duly attested and affixed by order of the said directors, did grant, release and convey all the said lands and premises to the said John G. Coster, his heirs and assigns, upon trust, nevertheless, for the same uses, intents and purposes as are mentioned, expressed, limited and declared in the first above recited indenture concerning the said lands and premises. And whereas, by the order of the directors of the said the New York and Schuylkill Coal Company, passed at a legal meeting held on the day of the date of these presents, and now signified to the said John G. Coster under the corporate seal of the said company duly attested and affixed, requiring him so to do, he, the said John G. Coster, hath bargained and sold the tract of land hereinafter described, and conveyed

[Brick v. Coster.]

unto the said Joseph M. Eldridge and John R. Brick, in fee-simple, for the consideration hereinafter mentioned. Now this indenture witnesseth, that in consideration of the premises, and of the sum of $1696, lawful money, to him in hand paid by the said Joseph M. Eldridge and John R. Brick, at the time of the execution hereof, the receipt whereof is hereby acknowledged, he, the said John G. Coster, trustee aforesaid, hath granted, bargained, sold, released and confirmed, and by these presents, by the order of the said directors of the said company, signified by their being a party hereto and sealing these presents, doth grant, bargain, sell, release and confirm unto the said Joseph M. Eldridge and John R. Brick, their heirs and assigns, as tenants in common, a certain tract of land, situate in Barry or Norwegian township, Schuylkill county, and State of Pennsylvania, beginning, &c., containing 424 acres 84 perches and allowance, &c., which said tract of land was surveyed in pursuance of a warrant dated the 18th of November 1793, granted to the said Catharine Groh, whose right in and to said tract, by virtue of sundry conveyances and other assurances in law, became vested in the said John G. Coster, in trust, for the uses and purposes specified in the aforesaid deed of conveyance from John Hone and others to the said John G. Coster, (and which tract of land the Commonwealth of Pennsylvania, by patent dated the 5th of May 1830, enrolled in patent-book H, vol. 28, page 257, granted to the said John G. Coster, his heirs and assigns for ever, in trust as aforesaid), together with all and singular the improvements, &c., to have and to hold the said tract of land above described, hereditaments and premises, hereby granted and conveyed, or mentioned and intended so to be, with the appurtenances, unto the said Joseph M. Eldridge and John R. Brick, their heirs and assigns for ever, in equal moieties as tenants in common, and not as joint tenants. And the said John G. Coster for himself, his heirs, executors and administrators, doth hereby covenant, promise and agree to and with the said Joseph M. Eldridge and John R. Brick, their heirs and assigns, in manner following, to say: that he, the said John G. Coster, hath not at any time heretofore made, done or committed, any act, matter or thing whatsoever, whereby the premises above described, or any part thereof, are, is, shall or may be impeached, charged or encumbered in title, charge, estate or otherwise. And lastly, the New York and Schuylkill Coal Company, for themselves and their successors, do hereby covenant, promise and agree to and with the said Joseph M. Eldridge and John R. Brick, their heirs and assigns, in manner following, to say: That they the said the New York and Schuylkill Coal Company, and their successors, all the said tract of land above granted and conveyed, or mentioned and intended so to be, with the appurtenances, unto the said Joseph M. Eldridge and John R. Brick, their heirs and assigns, as tenants in

[Brick v. Coster.]

common, against all person and persons whomsoever lawfully claiming or to claim the same, or any part or parcel thereof, shall and will warrant and for ever defend.

In witness whereof, the said John G. Coster hath hereunto set his hand and seal, and the New York and Schuylkill Coal Company aforesaid have caused their corporate seal to be affixed to these presents, the day and year first above written.

JOHN G. COSTER, [SEAL.]

JOHN G. COSTER, President.          ( Corporate )

THOS. B. MERCEIN, Vice Pres't.   (   SEAL.   )

Sealed and delivered, &c.

The court entered judgment for the plaintiff for want of a sufficient affidavit of defence.

Errors assigned :

The court erred in giving judgment for the plaintiff:

1. Because the affidavit of defence disclosed a full defence to the plaintiff's claim.

2. Because the affidavit stated that the bond, on which the action was brought, was given for the purchase money of a tract of land in Pennsylvania, held by the plaintiff in trust for a foreign corporation, and conveyed by him to defendants.

3. Because the plaintiff had not, at the time he sold the said land to defendants, a valid title to the same.

4. Because the plaintiff has never made to the defendants a good and sufficient title to the said land.

5. Because the only title made by the plaintiff, and now in the defendants, is one at any time defeasible by the State.

6. Because it was agreed at the sale that the plaintiff would make a good and sufficient title to the said land, free and clear of all claims, before the money for which the said bond was given should be demanded.

7. Because the plaintiff has settled and purchased certain outstanding titles or claims on adverse titles affecting other portions of the land in question, without including the said claims or titles so far as regards the lands sold by him to defendants.

8. Because one or more suits are now pending on adverse titles to that conveyed to defendants as aforesaid, which equally affect the land sold to defendants as aforesaid.

*Markland* and *Broom*, for the plaintiff in error, contended that the court erred in entering judgment, there being a sufficient defence set forth in the affidavit and deed to entitle the defendant to go to a trial. It was sufficiently shown that the plaintiff's title to the land conveyed was defective, inasmuch as it was held by him as trustee for a foreign corporation, who cannot hold lands in Pennsylvania; but they may at any period of time be seized by the State and escheated for their use. 5 *Binn.* 365 ; 8 *Serg. & Rawle* 178 ; 1 *Serg. & Rawle* 438 ; 5 *Serg. & Rawle* 201 ; 7 *Serg. &*

[Brick v. Coster.]

*Rawle* 51; 3 *T. R.* 450. And that either in their own hands or of a trustee for their use, or in the hands of a purchaser from them, as was held with respect to these lands in 14 *Pet.* 130. The Act of 6th of April 1833, (*Pamph. L.* 167), declares this to be the law of Pennsylvania in conformity with the rule at common law.

*Budd, contra,* was stopped by the court after referring to 1 *Watts & Serg.* 83, 443; 9 *Serg. & Rawle* 78; 6 *Binn.* 103.

The opinion of the Court was delivered by

KENNEDY, J.—This being an action of debt upon a bond, the plaintiff, unless the defendant filed a sufficient affidavit or affirmation of a defence, stating the nature of it, according to the Act of Assembly passed in this behalf, by a given day, became entitled to have a judgment for the amount of the bond. The defendant made and filed an affirmation of defence within the time prescribed by the Act of Assembly, but the counsel for the plaintiff conceiving the defence therein stated to be insufficient, moved the court below for judgment in his favour, and accordingly obtained it. The only question raised in the case, is as to the sufficiency of the defence set forth in the affirmation. If insufficient, the court acted rightly in rendering judgment for the amount of the bond in favour of the plaintiff; but if sufficient, and the plaintiff denied the facts upon which the defendant rested his defence, the cause ought to have been tried by the intervention of a jury.

The affirmation of defence shows that the bond in suit was given to Coster, the plaintiff, in trust for the New York and Schuylkill Coal Company, incorporated under the authority of the State of New York, to secure the payment of the purchase money of a tract of land situate within Schuylkill county of this State, sold and conveyed by the said company to the defendants named in the writ. That the land was purchased under an assurance that the vendors would give a general warranty against all claims, and make a good and sufficient title, free and clear of all claims, before the money for which the bond was given should be demanded. That a deed of conveyance, with a covenant for a general warranty of the title to the land, was made by the company to the defendants. That although such a deed of conveyance has been made, yet the defendants had reason to believe that there were adverse claims outstanding to the land, which existed anterior to their purchase of it, which had not been extinguished by the company. Now the effect of the covenant of general warranty of title contained in the deed, is only to bind the company to warrant and defend against legal and rightful claims made adversely to the land, and not against such as are invalid and cannot be made to affect the right and title acquired by the defendants under the deed made to them by the company. Neither is there anything

[Brick v. Coster.]

else set forth in the affirmation of defence which would bind the company beyond this. But the affirmation of defence does not contain an allegation that any of the outstanding adverse claims mentioned therein to the land is good, or believed by the affirmant to be so. To make adverse claims to the land a defence against the payment of the purchase money, without an allegation of their being valid, or, at least, believed to be so, and that the defendant believes that he will be able to prove the same on trial of the cause, might be in effect to prevent the company from ever recovering the purchase money, however good and valid the title might be, which they had passed to the defendants, because adverse, invalid claims might be kept on foot to the end of time.

But it is objected that no title whatever for the land passed from the company to the defendants, because by the laws of this State the company, being incorporated under the authority of another State, were incapable of holding the land and transmitting the title received by them from their vendor to the defendants; that the title which their vendor had to the land, vested immediately upon their purchase of it in the Commonwealth by escheat. The second section, however, of the Act of Assembly of the 6th of April 1833, entitled " an Act relating to the escheat of lands held by corporations without the license of the Commonwealth," (*Pamph. L.* 168), appears to be a sufficient answer to this objection. By this section, it is enacted, " that if the said associations (among the number of which associations it is said the company in this case was included), now engaged in mining, shall discontinue all their operations, under their several Acts of incorporation, within one year, then, and in that case, the Commonwealth does hereby release to the individuals composing said associations, according to their respective interests, all the right, title and interest which the Commonwealth has acquired to the real estate of said associations respectively, in pursuance of the laws and statutes relating to mortmain." It would seem that the company must have ceased their operations of mining upon the land within the year after the passage of the Act, by selling the land and taking the bond in question, which is dated on the 25th of April 1833, only 19 days after the date of the Act, as a security for the payment of the purchase money. It would therefore seem, that all claim which the Commonwealth had to the land by escheat, passed under the operation of the Act of Assembly, and the deed of conveyance made by the company to the defendants; consequently they ought to pay for it.

Judgment affirmed.